DANIEL PATCHIN, Respondent, v. RICHARD M. BIG-GERSTAFF, Appellant.

St. Louis Court of Appeals, April 19, 1887.

1. Vendor and Vendee—Evidence—Res Gestae.—In an action by the vendor against a third person involving the title to a chattel, evidence of what passed between the vendor and the alleged vendee, at the time of the alleged sale and delivery, is not hearsay, but is competent as tending to show the character of the alleged vendor's title and possession.

2. ———— TITLE—CONVERSION.—Title to a chattel does not, as against the owner, pass by a wrongful conversion, regardless of whether the conversion is criminal.

3. ———— SALES — COLLATERAL CONDITION. — The sale and delivery being complete, the vendee of chattels may convey a good title to an innocent purchaser, regardless of collateral conditions made by the vendor.

4. INSTRUCTIONS—WEIGHT OF EVIDENCE.—Instructions based upon substantial evidence can not be refused because the weight of the evidence is the other way.

APPEAL from the Knox County Circuit Court, BEN. E. TURNER, Judge.

*Reversed and remanded.*

O. D. JONES, for the appellant : It was error to admit the plaintiff's evidence of the agreement between himself, Sage, and Morris, in the defendant's absence. It is hearsay. *Reed v. Pelletier*, 28 Mo. 173 ; *Coble v. McDaniel*, 38 Mo. 363 ; *O'Neil v. Crain*, 67 Mo. 250 ; *Hambright v. Brockman*, 59 Mo. 52 ; *The State v. Sutton*, 64 Mo. 170 ; *Darrett v. Donnelly*, 38 Mo. 495. On the plaintiff's own testimony at the last, it was an incomplete sale. *Boutwell v. Warner*, 62 Mo. 350. Sage was the owner, subject to the condition of paying the purchase money. *Holliday v. Lewis*, 15 Mo. 406 ; *Cross v. Halett*, 53 Mo. 397 ; *Boutwell v. Warner*, 62 Mo. 350.

L. F. COTTEY, for the respondent : The statements of a party in possession of property, as to the nature of his possession, form part of the *res gestae*, and are admissible in evidence. *The State to use v. Schneider*, 35 Mo. 533 ; *Darrett v. Donnelly*, 38 Mo. 492 ; *Thomas v. Wheeler*, 47 Mo. 363 ; *Colt v. LaDue*, 54 Mo. 486 ; *Burgert v. Borchert*, 59 Mo. 80 ; *Degenhart v. Schmidt*, 7 Mo. App. 117 ; *Burns v. Peck*, 17 Mo. App. 580. Replevin will lie against the purchaser of a chattel from one who has tortiously obtained possession thereof. *Welker v. Wolverkuehler*, 49 Mo. 35.

Thompson, J., delivered the opinion of the court.

This was an action of replevin for a horse. The answer was a general denial, and a separate count, stating that the defendant bought the horse in good faith and for value of one Sage, to whom the plaintiff had entrusted it to be sold or delivered, or to be sold and delivered, and claiming to hold the horse as an innocent purchaser. There was a trial before a jury and a verdict and judgment for the plaintiff, from which this appeal is prosecuted.

It appeared at the trial that the plaintiff agreed to sell the horse to one Sage, who was a buyer of horses ; that Sage bought horses principally for the defendant, the defendant generally allowing him two dollars advance upon the price paid for the horses which he bought for him ; that, sometimes, he declined to pay him as much as he had paid for them, when they were not satisfactory ; that one Morris kept a store at a town called La Belle, and was in the habit of assisting Sage in his horse-buying transactions, by advancing money to him when necessary, and holding the horses until Sage procured the money to reimburse him ; that the horses, when so held, were held in a stable kept by two brothers named Halderman, under an agreement between them and Sage. Morris seems to have had no special interest in Sage's transactions, and seems to have assisted Sage in this way upon the view that Sage's operations brought business to the town and benefitted trade.

The plaintiff's evidence was to the effect that he agreed to sell the horse in controversy for one hundred and fifty dollars ; that he brought the horse to La Belle for the purpose of delivering it to Sage ; that, after arriving at La Belle, becoming distrustful of Sage, he declined to deliver the horse to Sage, but consented to deliver it to Morris, under an arrangement between the plaintiff, Morris, and Sage, whereby Morris agreed to hold the horse in Halderman Brothers' stable until Sage

should pay for the same, and either to return to the plaintiff the horse, or hand over to him the one hundred and fifty dollars, which Sage had agreed to pay the plaintiff therefor ; that Halderman Brothers had notice of this arrangement ; that, nevertheless, Sage, about four o'clock on the following morning, without the knowledge or consent of the plaintiff, or Morris, took the horse out of the stable, drove it to another place, and there sold it to the defendant, Biggerstaff. Sage, at the same time, took from the stable two other horses, which he had bought of other persons on credit. He sold the three horses to Biggerstaff for the aggregate price of three hundred and seventy-five dollars. He was then in debt to Biggerstaff in the sum of two hundred and seventy-five dollars, which the latter had advanced to him, and Biggerstaff settled with him by taking the horses and giving him his check for one hundred dollars. . Sage collected this one hundred dollars, gave fifty dollars of it to his daughter, and, with the other fifty dollars, left that part of the state. He remained away for a considerable period of time, when he voluntarily returned and was arrested, and, it would seem, prosecuted for larceny. What became of the prosecution does not appear, nor is it material.

On the other hand, the defendant's testimony, chiefly that of Sage, whose character was impeached by several witnesses, and sustained by none, was to the effect that the plaintiff had made an out-and-out sale of the horse to him (Sage), and had delivered the horse to him, saying that he would trust Sage for the purchase money ; that the horse had been put, by Sage, into the stable of Halderman Brothers, under the general arrangement which he had with them, by which they kept his horses at a reduced price ; that Halderman Brothers had no notice of any arrangement by which the horse was to be held in their stable until Sage should pay the plaintiff for it, and that Sage took the horse early in the morning, in the regular course of his operations, as he

had often done before, with the other two horses, and drove them to Biggerstaff's and sold them, as above stated. There was no evidence tending to show any bad faith on the part of Biggerstaff in the purchase of the horse, and we do not understand that it is claimed that he did not act in entire good faith, supposing that the horse belonged to Sage.

Leaving out other matters of detail, it is quite obvious that, if the jury believed the plaintiff's testimony, they must have concluded, under proper instructions, that the plaintiff had never delivered his horse to Sage, and had never parted title with it. A conditional delivery to Morris would not have been a delivery to Sage, until the condition had been complied with. On the other hand, if they had believed that the plaintiff had delivered the horse unconditionally to Sage, trusting Sage, or trusting Morris, or trusting both Morris and Sage, for the purchase money, then, under proper instructions, they must have concluded that the title to the horse was in Sage at the time when he sold it to Biggerstaff, and their verdict would have been for the defendant. This being the case, we shall notice the substantial points relied upon by the appellant.

I. The first point is, that the court erred in admitting testimony as to conversations, which took place between the plaintiff, Sage, and Morris, at the plaintiff's store, which, according to the plaintiff's evidence, resulted in the arrangement that Morris was to hold the horse for the plaintiff, in the stable of Halderman Brothers, until Sage should produce the money for it, or return it to the plaintiff, if the money should not be produced. The defendant seems to have objected to this testimony, and afterwards requested an instruction excluding it, on the idea that, because the defendant was not present he was not bound by the conversations. The question at issue was, whether the horse had actually been delivered to Sage, or not. The conversations took place at the time of the alleged delivery, and related

thereto. They were, therefore, a part of the *res gestae;* were verbal acts, and were admissible, upon the plainest principles, to explain the circumstances under which Sage became possessed of the horse, and to enable the jury, under proper instructions, to decide whether the horse had actually been delivered by the plaintiff to Sage, or not. It is unnecessary to cite decisions to show that such evidence is admissible.

II. It is plain, from the foregoing statement of the evidence, without extending any argument thereupon, that the court committed no error in overruling a demurrer to the evidence.

III. Error is assigned upon the ruling of the trial court, in refusing eight instructions, requested by the defendant. The first may be laid out of view, because it instructed the jury that there was no evidence that Sage stole the horse from the plaintiff. The third, fourth, and eighth, were all drawn with the view of leading the jury to a finding that Sage had not committed larceny in taking the horse, and they contained the element, that, in order to find that Sage had stolen the horse, the jury must be satisfied of that fact beyond a reasonable doubt. These four instructions were all misleading. It was wholly immaterial whether Sage had stolen the horse, or not. The question at issue was, whether the title to the horse had ever passed out of the plaintiff into Sage. If it had not, Sage could not convey a title, even to an innocent purchaser. It was not even necessary, in order to defeat the plaintiff's title to the horse, that Sage should have acquired possession of the horse wrongfully. Even if he had originally acquired possession of the horse rightfully, so long as it remained the property of the plaintiff, Sage could not have transmitted a good title to it to Biggerstaff. The element of reasonable doubt, which is injected into the last three of the instructions under comment, has no application in civil trials. The court, therefore, rightfully refused these four instructions.

The fifth instruction attempted to withdraw from the jury the evidence touching the conversations between the plaintiff, Sage, and Morris, already spoken of, and has been disposed of in the observations made under the first point.

One of the instructions, the refusal of which is assigned for error, was as follows : "2. And, if you find that the plaintiff sold his horse to Sage, and delivered it to him, and, upon the oral guaranty of Morris, left it in the actual possession of Sage, or Morris, or both, and that Sage sold the horse to the defendant, and he bought it for a valuable consideration, in good faith, then the plaintiff can not recover in this action." This instruction was, certainly, pertinent to the defendant's evidence, and we do not see that the hypothesis therein given is contained in any instruction which the court gave. It is, certainly, the law that, if the plaintiff sold, and delivered, the horse to Sage, and left it in the actual possession of Sage, upon the oral guaranty of Morris that the purchase price would be paid, and if Sage, thereafter, sold the horse to the defendant, for a valuable consideration, in good faith, the plaintiff can not recover ; nor could the plaintiff recover, irrespective of the question whether the horse had been sold by Sage to the defendant, in good faith. Upon the facts in the first proposition of the foregoing instruction, the title had passed out of the plaintiff into Sage, and the plaintiff, thereafter, could not maintain replevin against a stranger, for the horse, because he had no title to it. As the defendant gave evidence of the facts upon which this instruction was predicated, the trial court was bound, whether such evidence was regarded as credible or not, to submit the instruction to the jury. It was for them to say, after being properly advised as to the law, whether they would believe the plaintiff's witnesses, or the defendant's.

Another one of the instructions, the refusal of which is assigned for error, was as follows : " 6. And if you find, from the evidence in the cause, that the plaintiff sold his

horse to Sage, for the sum of one hundred and fifty dollars, and delivered it to him, and he saw Sage put it in his charge and care, into Hilderman's stable, and trusted Sage for the purchase money, or trusted Morris for it, or trusted both Sage and Morris for it, and left it in the actual possession of Sage, then Sage had a color of right to the horse, and it was not larceny to remove and sell him, and you should find for the defendant." This instruction was not well drawn, but its defect consisted in the fact that it was drawn less strongly for the defendant than the conclusion of law, upon the facts hypothetically stated, would have warranted. If the horse had been sold by the plaintiff, and delivered to Sage upon credit, as therein stated, then it belonged, in law, to Sage. It was his horse, and he had something more than "a color of right to it." In such a case, of course, it was not larceny to remove and sell the horse, nor was it a wrong of any kind ; and the jury should, upon such a state of facts, undoubtedly, had they believed them to exist, have found for the defendant.

The next instruction varies a little from the preceding in the statement of the hypothetical facts. It was as follows: "7. The court further instructs the jury that, if you find, from the evidence in the cause, that the plaintiff sold the horse in question to Sage, for the agreed sum of one hundred and fifty dollars, and delivered it to Sage, and saw him put it, in his charge and care, in the Halderman stable, and trusted Sage for the purchase money, and afterwards received, upon his request, the oral assurance of Sage and Morris, or either of them, and trusted them, or either of them, for the purchase money of the horse, and left the horse in the actual possession of Sage, as he had delivered it to him, then it was an incomplete sale of the horse to Sage, and the plaintiff can not recover in this action." This instruction, though, likewise, unskillfully drawn, states the correct conclusion of law upon the hypothetical facts set forth, and, in the state of the evidence, the defendant

was entitled to have such an instruction given. The principal criticism to which the instruction is subject, is, that it does not state the law as strongly in favor of the defendant as it is. Upon the hypothetical facts there stated, it was a *sale* of the horse from the plaintiff to Sage, and the word, "incomplete," might have been left out entirely. When the plaintiff parted with the possession of the horse to Sage, if he did so part with it, upon an agreement to look to Sage, or to Morris, or to both of them, for the purchase money, his vendor's lien was gone ; the horse, thereafter, became the property of Sage, and the plaintiff could not maintain replevin therefor.

As the elements contained in the three instructions, last set out, were not submitted to the jury, we are bound to reverse the judgment and remand the cause for another trial, however reluctant, in view of the evidence, we may be to do so. It ought to be added that we do not regard the statute relating to the conditional sales of personal property (Rev. Stat. sect. 2507), as having any application to this case.

With the concurrence of Rombauer, J., the judgment will be reversed, and the cause remanded ; Lewis, P. J., is absent.